

SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re: | Case No.: 23-00066 |
| | Chapter 13 |
| SHARON SUE ROBINSON, | |
| Debtor. | Related: ECF 128 |

## ORDER ON OBJECTION TO CLAIM OF WRIGHT & KIRSCHBRAUN, LLLC AND THE CHAPTER 13 TRUSTEE'S MOTION TO DISMISS

Sharon Robinson has objected (ECF 128) to the proof of claim (Claim No. 10) filed by Wright & Kirschbraun, LLLC ("WK"). WK is a law firm that represented Ms. Robinson in prebankruptcy litigation. WK asserts that Ms. Robinson owes WK attorneys' fees, expense reimbursements, and interest in the amount of $258,838.30. Ms. Robinson contends that the fees

1

and expenses are unreasonable and excessive. WK filed a response, supported by two declarations and multiple exhibits (ECF 132). In addition to taking the claim objection under advisement, I also took the chapter 13 trustee's motion to dismiss under advisement.

For the following reasons, I will SUSTAIN the objection in part and reduce the claim on account of one payment she made to WK that is apparently not reflected on WK's invoices, and I will OVERRULE the objection in all other respects. I will conditionally GRANT the chapter 13 trustee's motion to dismiss and give Ms. Robinson 21 days to file an amended plan or motion to convert.

## I.    Procedure

At the hearing on May 6, 2025, Ms. Robinson argued that the court must conduct an evidentiary hearing on the objection. I ordered Ms. Robinson to file a declaration setting forth the direct testimony that she would offer at an evidentiary hearing and took under advisement whether such a hearing is warranted. Ms. Robinson filed the declaration as directed (ECF 140).

In a contested matter under rule 9014,[1] the court must conduct an evidentiary hearing only if there are genuine disputes concerning material issues of fact. The court need not conduct such a hearing if the factual disputes are not relevant to the questions the court must decide. *Brown v. Quantum3 Group LLC* (*In re Brown*), 606 B.R. 40, 51 (B.A.P. 9th Cir. 2019). Further, an evidentiary hearing is less important in this context because "judges are justified in relying on their own knowledge of customary rates and their experience concerning reasonable and proper fees." *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

Ms. Robinson and WK disagree about a great many things. But the court can determine the reasonableness of WK's claim without resolving most of those disagreements. Therefore, no evidentiary hearing is necessary.

## II. Legal Standard

When a party objects to a proof of claim, the bankruptcy court looks

---

[1] Unless otherwise indicated, all references to rules are to the Federal Rules of Bankruptcy Procedure and all references to sections are to the Bankruptcy Code, 11 U.S.C.

3

to applicable nonbankruptcy law to determine the allowed amount of the claim. § 502(b)(1). Hawaii law governs the claim of a Hawaii attorney against a Hawaii client for legal services rendered in Hawaii.

Under Haw. R. Prof. Conduct 1.5(a):

> A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:
>    (1)  the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>    (2)  the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>    (3)  the fee customarily charged in the locality for similar legal services;
>    (4)  the amount involved and the results obtained;
>    (5)  the time limitations imposed by the client or by the circumstances;
>    (6)  the nature and length of the professional relationship with the client;
>    (7)  the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>    (8)  whether the fee is fixed or contingent, and in contingency fee cases the risk of no recovery and the conscionability of the fee in light of the net recovery to the client.

### III. Factual Background

4

WK represented Ms. Robinson in a state court lawsuit in which her former life partner and members of his family accused her of fraud, forgery, embezzlement, and other serious misconduct, based on events that occurred many years before the case was filed.[2] The plaintiffs accused her of embezzling about $1.5 million dollars and sought an unspecified but surely large amount of compensatory and punitive damages.

The stakes for Ms. Robinson were greater than her potential monetary liability. Ms. Robinson worked in the mortgage lending industry. If the court found that Ms. Robinson committed fraud or similar wrongdoing, her license to work in the mortgage business could have been in jeopardy.

The litigation was intense. WK conducted and responded to extensive requests for production of documents and took and defended several depositions. WK also filed several motions for partial summary judgment; the court granted some of those motions, which significantly

---

[2] Ms. Robinson says that she agreed to retain Keith Kirschbraun, one of WK's partners, and did not agree to retain Deborah Wright, the WK partner who did most of the work on her case. But paragraph 2 of the retention agreement she signed (exhibit B to WK's proof of claim at 2) expressly states that she was retaining the firm, not any individual attorney, and that any attorney in the firm could work on her case.

5

narrowed the claims against Ms. Robinson. Despite the amount of work required and the problems caused by the COVID-19 pandemic, WK was ready to try the case about eighteen months after the complaint was filed. In my experience, this is a short time to prepare a case like this one.

The state court judge put pressure on both sides to settle the case. On the eve of trial, the parties agreed to a settlement. The plaintiffs delayed the documentation and completion of the settlement, so WK filed a motion asking the court to enforce it. Eventually, the parties signed and concluded the settlement.

## IV. General Objections

Ms. Robinson paid about $110,000 of fees and expenses that WK billed, but WK claims that she still owes $258,838.30. Ms. Robinson contends that those amounts are unreasonable.

Most of Ms. Robinson's objection rests on her opinion that WK could and should have won her case easily and inexpensively. She says that the suit was a "simple partition and accounting case" and "not a complex matter." ECF 128 at 3. This argument is fundamentally flawed for at least

6

two reasons.

First, Ms. Robinson is offering her opinion about the difficulty and likely outcome of the case. But Ms. Robinson is not an attorney and has no expertise in evaluating legal claims, and her lay opinion is not helpful in determining a fact in issue in this matter. Therefore, her evaluation of the case is inadmissible. Fed. R. Evid. 701, 702.

Second, her evaluation is patently unreasonable. The allegations of the complaint are serious and far-reaching. Because many of the claims rest on what the parties said to one another, the case would have hinged largely on which witnesses the judge found credible. In such a case, there is no such thing as a slam dunk. If the case had been easy, the court would have granted all of Ms. Robinson's motions for partial summary judgment and dismissed the case well before trial.[3] The fact that the court denied some of those motions establishes that the case was not simple.

---

[3] Ms. Robinson claims that the motions for partial summary judgment were done improperly, but as a non-attorney she lacks the expertise to make such a statement. She also contends that the motions were filed too late, but she does not say why she thinks they could or should have been filed earlier; Ms. Robinson may not know that courts are reluctant to grant motions for summary judgment until after the parties have had a reasonable opportunity to complete discovery.

7

Ms. Robinson is also unhappy with the settlement of the case. She says that she "was pressured into signing a bad settlement agreement late at night, and under the threat of court sanctions, despite having successfully proven I did nothing wrong." (ECF 128 at 4.) The record does not support her view that she "successfully prove[d]" her case. To the contrary, there were unresolved issues that required a trial. It is true that the state court judge pressed the parties to settle the case before trial: on the Friday before the Monday trial date, he ordered the plaintiffs to make a settlement offer by noon Saturday and ordered Ms. Robinson to respond by 5:00 pm on Sunday. (ECF 140 at 58.) It is neither uncommon nor improper, however, for a trial judge to remind the parties of the advantages of a settlement over a contested trial and to put pressure on the parties to take that reminder seriously. There is no dispute that Ms. Robinson agreed to the settlement; neither her reluctance at the time, nor her apparent "buyer's remorse," justifies a reduction of otherwise reasonable attorneys' fees.

Ms. Robinson emphasizes that she worked hard on her case. I do not

8

U.S. Bankruptcy Court - Hawaii    #23-00066    Dkt # 142    Filed  06/02/25    Page 8 of 17

doubt this. The case was very important to her, both financially and personally. But this does not mean that WK's fees are unreasonable. In fact, the fees probably would have been higher if she had not done some of the work herself. She does not claim that WK did not do, or did not need to do, any of the work that is reflected in its billings.

Ms. Robinson objects to WK's request for reimbursement of the fees charged by a handwriting expert. Ms. Robinson offers a portion of an email to Ms. Wright in which she said that she did not want WK to hire a handwriting expert (ECF 140 at 48). Ms. Wright's declaration explains why a handwriting expert was necessary (ECF 132-1 at 14) and convinces me that not hiring a handwriting expert (at a cost of only $1,800.00) would have been foolish. The plaintiffs accused Ms. Robinson of forgery. Appearing at a forgery trial without a handwriting expert would be like appearing at the proverbial gunfight armed only with a knife. I also note that there is no evidence that Ms. Robinson persisted in her objection to the retention of the expert, she paid WK about $43,000 after she raised her objection, and she later praised WK, saying "it helps to have the best

9

attorney and law firm on your side" (ECF 132-8). I therefore infer that Ms. Wright convinced Ms. Robinson that the handwriting expert was necessary.

Ms. Robinson also offers evidence, and WK does not dispute, that a friend of hers offered WK $100,000 in settlement of the claim but no settlement resulted. A settlement offer is not admissible "to prove or disprove the validity or amount of a disputed claim . . . ." Fed. R. Evid. 408(a). Further, WK's willingness to entertain such an offer does not necessarily imply that WK thought its fees were unreasonable; it is more likely that, because WK is an experienced and prudent firm, it wisely desired to avoid a dispute with a former client even though it thought its fees were proper.

V.   **Analysis of Reasonableness**

Considering the specific factors identified in the Rules of Professional Conduct, I find that the fees and expenses are reasonable.

<u>Effort, Difficulty, and Skill</u>. WK's billing statements include detailed records of the time expended and tasks undertaken by its attorneys and

10

paralegals and the expenses incurred. I find that WK actually did all of the work and incurred all of the expenses billed, that all of those services and expenses were necessary, and that the time expended on each task was reasonable. I also find that WK delegated work to paralegals at lower hourly rates where appropriate and that it exercised reasonable billing judgment by not charging Ms. Robinson for certain work.

The case required significant skill, and WK handled the case skillfully. The firm successfully moved for partial summary judgment on some of the claims. The exhibits make clear that the firm handled discovery efficiently and effectively.

Ms. Robinson makes only two specific complaints about WK's services.

First, she argues that the firm failed to file a lis pendens against the subject property. This complaint is baseless. It is far from clear that Hawaii law would permit a lis pendens in these circumstances. *S. Utsunomya Enters., Inc., v. Moomuku Country Club*, 75 Haw. 480, 513 (1994) (holding that a lis pendens is not proper where the complaint "is predominantly a fraud

11

and breach of contract complaint . . . seeking damages" and the plaintiff "does not claim title to or a right of possession of the property."). Ms. Robinson did not provide a copy of her counterclaim, but according to Ms. Wright's description (ECF 132-1 at 12), the counterclaim only asserted claims for money damages, and did not seek to establish an ownership interest in the property. Further, a lis pendens would have been useless. Ms. Robinson was a co-owner of the property, so as a practical matter her adversaries would have had great difficulty selling their interest whether or not she filed a lis pendens.

Second, she argues that WK failed to pursue claims against a member of the plaintiffs' family who was not a party to the case but who encouraged the plaintiffs to proceed and paid a portion of the fees charged by the plaintiffs' counsel. But the law does not prohibit family members from helping one another in litigation.

<u>Barriers to Other Employment</u>. WK does not contend that their representation of Ms. Robinson precluded them from accepting other employment. This factor is neutral.

12

Customary Fees. Based on my own experience and observation over many years, the hourly rates charged by WK for the work of its attorneys and paralegals are reasonable and customary in this community.

Amount Involved and Results Obtained. As I have noted, the monetary and professional stakes were high for Ms. Robinson. WK successfully limited the claims against her through motions for partial summary judgment and negotiated a settlement that protected her from these risks. Ms. Robinson is dissatisfied with the results because she thinks she could and should have won complete victory in the litigation. Her expectation is objectively unreasonable. She could only have won complete victory in a case like this if the court believed her testimony and disbelieved the testimony offered by the plaintiffs, and it is impossible to predict whether that would have happened. Clearly Ms. Robinson is convinced that she was telling the truth and the plaintiffs were not, but one cannot know whether the court would have agreed with her.

Time Constraints. WK prepared the case for trial in about eighteen months, which is extraordinarily fast considering the amount of discovery

13

U.S. Bankruptcy Court - Hawaii    #23-00066    Dkt # 142    Filed  06/02/25    Page 13 of 17

and motions practice required and the challenges of the COVID-19 pandemic. The conclusion of the settlement was delayed by changes in the plaintiffs' attorneys, a problem for which WK is not responsible.

Professional Relationship. This factor is neutral because this was a one-time representation.

Experience, Reputation, and Ability. Deborah Wright, the lead attorney representing Ms. Robinson, is an experienced, aggressive, prudent, and highly capable litigator with an excellent reputation in the community. She has appeared before me in multiple cases and she and her firm have always done first-rate work.

Fixed or Contingent Fee. WK agreed to represent Ms. Robinson on an hourly basis. No adjustment for the risk of nonpayment is warranted.

VI. **Amount of Claim**

Ms. Robinson contends that she made certain payments that are not reflected in WK's billings: a payment of $2,000.00 on September 29, 2021; a second payment of $2,000 on January 7, 2022; and a third and fourth payment of $1,000.00 each on July 29, 2022.

14

As to the first payment, Ms. Robinson has produced an email dated September 29, 2021, from a WK staffer confirming receipt of a $2,000 payment. WK has not provided a copy of its invoice for the month of September 2021, but the ending balance on the statement for August 2021(*id*. at 202) is exactly $2,000 greater than the previous balance on the statement for October 2021 (*id*. at 203). I therefore infer that WK did apply this payment to Ms. Robinson's account.

As to the second payment, Ms. Robinson offers a statement showing a debit card payment to WK on January 7, 2022. WK's invoices do not reflect a matching credit for his payment. Therefore, I find that WK's claim must be reduced by $2,000.00.

As to the third and fourth payments, WK's invoice dated 8/31/2022 (proof of claim 10-1 part 5 at 242) shows two payments of $1,000 each that were credited on August 17, 2022. Although this date is almost three weeks after Ms. Robinson sent credit card authorizations to WK on July 29, 2022, there is no evidence that Ms. Robinson made two more payments of $1,000 each in the meantime. Therefore, I find that WK properly applied those

15

payments to Ms. Robinson's account.

The reduction of WK's claim by $2,000 means that the accrued interest must also be adjusted. Pursuant to the retainer agreement, WK is entitled to charge interest at 1% per month. Interest at that rate on $2,000.00 is $20.00 per month. Thirteen months elapsed between the date of the payment in early January 2022 and the date of Ms. Robinson's bankruptcy petition in late January 2023, so the claim must be reduced by $260.00.[4]

Ms. Robinson claims that WK's claim includes postpetition interest, which is not allowable. *See* § 502(b)(2). But the proof of claim only includes interest up to the petition date, so no reduction on this account is warranted.

Ms. Robinson contends that WK double charged State of Hawaii general excise tax. WK's invoices do not support this contention.

### VII. Conclusion

For these reasons, the objection is SUSTAINED in part. The

---

[4] This adjustment is probably too large. It is not clear that WK billed Ms. Robinson for interest during this period. Nevertheless, I will give Ms. Robinson the benefit of the doubt on this score.

allowed amount of WK's claim is reduced to $256,578.30. In all other respects, the objection is OVERRULED. The court conditionally GRANTS the chapter 13 trustee's motion to dismiss Ms. Robinson's case unless she files an amended plan or motion to convert within 21 days of the entry of this order.

**END OF ORDER**